# Legal Effect of Joint Resolution Disapproving the President's Pay Recommendations

A joint resolution of Congress disapproving the President's pay recommendations under the Federal Salary Act of 1967 has no legal force when the joint resolution was passed by one house after the expiration of the statutorily prescribed 30–day period for Congress to disapprove the recommendations. The recommended pay raises are therefore effective. Congress remains free, however, to repeal those pay raises through legislation for that purpose.

February 9, 1987

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This responds to your request for our opinion whether § 3 of H.R.J. Res. 102 effectively "disapproved" the recent pay recommendations made by the President pursuant to the Federal Salary Act of 1967, 2 U.S.C. §§ 351 et seq. We believe § 3 has no legal force, because H.R.J. Res. 102 was passed by the House after expiration of the statutorily prescribed 30–day period for a joint resolution of disapproval. Therefore, the salary increases become effective in accordance with 2 U.S.C. § 359.

The Federal Salary Act was intended to provide a systematic method of adjustment in the rates of pay for the Vice President, members of Congress, members of the federal judiciary, and most positions in the Executive Branch covered by the Executive Schedule. The Act creates a Commission on Executive, Legislative, and Judicial Salaries, to be established every four years, with a mandate to review and recommend to the President appropriate salary levels for the specified officials. Id. §§ 351, 356. Not later than December 15 of the fiscal year in which the review is conducted, the Commission is required to submit to the President a report of the results of its review and its recommendations as to appropriate salary levels. Id. § 357. The President, in turn, must "include, in the budget next transmitted . . . by him to the Congress . . . his recommendations with respect to the exact rates of pay which he deems advisable, for those offices and positions." Id. § 358. These recommendations become effective in accordance with § 359(2)[1] "unless any such recommendation is disapproved by a joint resolution agreed to by the Congress not later than the last day of the 30–day period which begins on the date . . . such recommendations are transmitted to the Congress." Id. § 359(1).

---

[1] Section 359(2) provides that the "effective date" of the recommended rates of pay "shall be the first day of the first pay period which begins for such office or position after the end of the 30–day period [for congressional review]."

18

Pursuant to this statutory scheme, in January the President submitted, with the budget, recommended pay increases for the covered positions. The 30–day period provided by § 359(1) for passage of a joint resolution of disapproval expired at midnight, February 3, 1987. On January 29, 1987, well before expiration of the period, the Senate passed H.R.J. Res. 102. As passed by the Senate, § 3 of H.R.J. Res. 102 provides that:

> The recommendations of the President relating to rates of pay for offices and positions within the purview of section 225(f) of the Federal Salary Act of 1967 [2 U.S.C. § 356], as included (pursuant to section 225(h) of such Act [2 U.S.C. § 358]) in the budget transmitted to the Congress for fiscal year 1988, are disapproved.

The House, however, did not take final action on H.R.J. Res. 102 until February 4, 1987, the day after expiration of the 30–day period prescribed by § 359(1). Although the resolution passed by both Houses of Congress is identical and therefore will become law if signed by the President, we believe that the delay in House action beyond the statutory 30–day period rendered ineffective Congress' action disapproving the raise.

To our knowledge the issue raised is one of first impression. We start from the well-founded premise that Congress could pass legislation at any time to set specific rates of pay for the covered positions, consistent with constitutional limitations.[2] Clearly, Congress cannot bind itself legislatively from enacting future legislation. Congress could, for example, pass a bill directing that the rates of pay for the covered positions be no more than the rates payable as of a given date, or actually setting specific salary levels. Such legislation, if signed by the President, would supersede the effectiveness of the raises recommended by the President under the Salary Act.[3] Although it can be argued that the difference between such legislation and the resolution of disapproval contained in H.R.J. Res. 102 is only formalistic and that Congress' inclusion of § 3 in the resolution must therefore be given effect, we believe the sounder view is that Congress did not intend in this instance for the disapproval to have any legal force and effect.

---

[2] The Compensation Clause of the Constitution, art. III, § 1, provides that federal judges shall receive "a Compensation, which shall not be diminished during their Continuance in Office." Under *United States* v. *Will*, 449 U.S. 200 (1980), a judge's salary increase "'vests' for purposes of the Compensation Clause *only when it takes effect* as part of the compensation due and payable to Article III judges." *Id.* at 229 (emphasis added). Because § 359(2) of the Salary Act provides that the recommended pay increases become effective on the first day of the first pay period after expiration of the 30 days provided for congressional review, we read *United States* v. *Will* to mean that legislation to deny the recommended raises to members of the judiciary would have to be passed by Congress and signed by the President before the beginning of the next applicable pay period, which we understand is March 1, 1987.

[3] Congress has, in fact, frequently used the appropriations process to set specific salary levels for federal employees that are different from those set pursuant to existing statutory schemes (such as the Salary Act and 5 U.S.C. § 5305). The most recent example is § 144 of last year's Continuing Resolution, Pub. L. Nos. 99–500 and 99–591, in which Congress mandated an across-the-board three-percent pay increase for federal employees.

It is clear, both from the language of § 3 which specifically references the procedures of the Salary Act as well as the debates on H.R.J. Res. 102, that both Houses of Congress understood they were acting pursuant to the statutory scheme set up by the Federal Salary Act, including the 30–day time limit provided in § 359(1). *See, e.g.*, 133 Cong. Rec. 2273 (1987) (remarks of Sen. Glenn); 133 Cong. Rec. 2687–88 (1987) (remarks of Rep. Ford). There was also considerable doubt voiced in both Houses that failure to act within the statutory deadline would render any vote on the proposed resolution of disapproval moot. For example, Representative Ford, Chairman of the House Post Office and Civil Service Committee, which had jurisdiction over the recommended pay raises, stated that:

> Under the explicit terms of section 225 of the Federal Salary Act of 1967, it is clear that the deadline for congressional disapproval of the President's pay recommendations expired at midnight last night, February 3. Since the House did not act by that deadline, what we do today is meaningless.

133 Cong. Rec. 2687 (1987). Similar views were voiced by other members of the House and Senate. *See, e.g.*, 133 Cong. Rec. 2282 (1987) (remarks of Sen. Humphrey); *id.* at 2288 (remarks of Sen. Wilson); *id.* at 2278 (remarks of Sen. Grassley); 133 Cong. Rec. 2688 (1987) (remarks of Rep. Smith). We have found no contrary statements in the debates to suggest Congress wished to ignore the 30–day limitation imposed by § 359(1). Therefore, while the Senate certainly intended to disapprove the proposed increases, its intent was to do so within the 30–day period, consistent with the statutory scheme; passage of H.R.J. Res. 102 by the Senate does not necessarily imply any intent or authorization once that 30–day period expires. Because of the failure of the House to act within the 30–day period, its intent obviously was not to disapprove the recommended increase within the required 30–day period. Indeed, in light of the floor statements indicating that the House believed action on the bill after the 30th day to be meaningless, we cannot say that the House intended to disapprove the President's recommendations at all.[4] Looking at the intent of both Houses, we conclude that there was no clear mutual intent to disapprove the recommended pay raises.

In any event, we believe that Congress is correct in its interpretation of the effect of the 30–day deadline in § 359(1). Although Congress obviously could achieve the same result, *i.e.*, continuance of executive, legislative, and judicial salaries at their current levels through other types of legislation, it chose to use the mechanism provided in § 359(1). Because Congress chose to limit its expression of disapproval within the terms of the Federal Salary Act, including the requirement of a joint resolution of disapproval passed within 30 days following the President's transmittal of his recommendations, its actions must

---

[4] In a sense, as of 12:01 a.m. on February 4, 1987, there were no "recommendations" of the President to be approved; by operation of statute, those recommendations became actual pay increases, automatically effective as of the first day of the next pay period.

20

be interpreted accordingly. Had Congress either successfully stated its disapproval within the requisite 30 days, or, before or after that period, expressly indicated a willingness to disregard the existing statutory scheme, for example, by amending § 359 or by expressly setting specific salary levels by legislation, Congress could have easily and effectively disapproved the pay raises. Congress, however, expressly acted within the confines of the Federal Salary Act, and we believe the time limit imposed by that Act is therefore controlling.

In sum, although the question is novel, we believe that § 3 of H.R.J. Res. 102 does not legally roll back the salary increases recommended by the President. Those increases must therefore be put into effect, subject to any subsequent congressional repeal of the pay raise as suggested above.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

21